IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATRICK H. OKI,<br>#A6081451,<br><br>Petitioner,<br><br>vs.<br><br>SHAWN ORNELLAS,<br><br>Respondent. | Civil No. 24-00413 MWJS-KJM<br><br>ORDER DENYING PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY, ECF NO. 1, AND DENYING CERTIFICATE OF APPEALABILITY |

## <u>INTRODUCTION</u>

These days, computers are practically everywhere.  That goes for criminal cases, too:  "[w]hen a crime occurs, the police may have no idea who did it.  But they can usually assume that whoever did it uses computers."  Orin Kerr, *The Digital Fourth Amendment:  Privacy and Policing in Our Online World* 24 (2024).  For that reason, it may no longer always be sensible to say that a person has committed an aggravated crime merely because they have used a computer to commit it.

In the face of this reality, the Hawaiʻi state legislature chose to amend the state criminal law to eliminate the standalone offense of "Use of a Computer" in the commission of a theft crime, along with its enhanced criminal penalty of a twenty-year indeterminate sentence.  A defendant can, of course, still be prosecuted for committing

the underlying theft.  But they can no longer, under current law, be separately prosecuted for the additional crime of using a computer to do so.

These legislative changes came too late for Petitioner Patrick H. Oki.  Before the law was amended, he was charged in state court with committing, among other things, the use of computer crime.  After the law changed, Oki asked Hawaiʻi state courts to set those charges and, later, his sentence aside.  They declined to do so, reasoning that the charges were filed before the law changed, the new legislation was not retroactive, and Oki's sentence did not amount to unconstitutional cruel and unusual punishment.

Oki now asks this Court, under 28 U.S.C. § 2254, to intervene, reasserting his claim that his sentence constitutes cruel and unusual punishment.  His argument has some surface appeal, given the Hawaiʻi state legislature's decision to prospectively amend the law.  That surface appeal is, of course, blunted by the fact that the legislature chose not to make the amendment retroactive—which itself reflects a legislative judgment to leave a past sentence like Oki's alone.  In any event, surface appeal is not enough to warrant federal habeas relief.  "Federal habeas review is highly deferential to the state courts and a petition should only be granted to correct 'extreme malfunctions in the state criminal justice systems.'"  *Lopez v. Allen*, 47 F.4th 1040, 1047 (9th Cir. 2022) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).  Because no such malfunction occurred here, the Court must DENY the petition.

## BACKGROUND

This case has a long and complicated procedural history in state court, all of which is well known to the parties.  Only the most relevant parts will be described here.

1.  Oki is the former managing partner of a local accounting firm.  *See State v. Oki*, No. CAAP-18-0000501, 2020 WL 3027401, at *1 (Haw. Ct. App. June 5, 2020).  The firm's other former partners began to suspect that Oki had stolen money from the firm, and they reported him to police.  *Id.*  Oki ultimately was charged in state court with, among other things, four counts of theft in the first degree and two counts of use of a computer in the commission of a separate crime.  *Id.* at *1-5.

The use of computer charges were brought pursuant to what was, at that time, Hawaiʻi Revised Statutes (HRS) § 708-893(1)(a) (2014).  *Id.* at *4.  More specifically, at the time Oki was charged, HRS § 708-893(1)(a) made it a separate crime for someone to intentionally use a computer to commit theft in the first or second degree.  And use of a computer was not only treated as a separate crime, but also as a more serious crime: under HRS § 708-893(2), the separate crime of use of a computer was classified at one class greater than the underlying crime.  In effect, then, Oki faced an indeterminate term of imprisonment of ten years for each theft in the first-degree offense (a class B felony), *see* HRS § 706-660 (2014), but a twenty-year indeterminate term, without the possibility of suspension or probation, for each use of computer offense (a class A felony), *see* HRS § 706-659 (2014).

After Oki was charged, the Hawaiʻi state legislature amended HRS § 708-893 so that it no longer applies to theft in the first or second degree.  *See* 2016 Haw. Sess. Laws Act 231, § 42 at 758-59.  Consequently, Oki could not have been charged with use of a computer if he had been charged on or after July 1, 2016—that is, the effective date of the revised statute.  *See id.* at 776.  Unfortunately for Oki, he had been charged before that date.

But Oki sought to avail himself of the legislative changes anyway.  Before trial, he moved to dismiss the two counts for use of a computer, arguing that HRS § 708-893(1)(a) imposed penalties that violated the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Oki*, 2020 WL 3027401, at *6.  The state trial court—which is called a "circuit" court in the Hawaiʻi state court system—denied Oki's motion.  *Id.*

After a jury-waived trial, the circuit court found Oki guilty on both counts of use of a computer.  *Id.* at *7.  As to these two counts, the circuit court found that Oki had used a computer to steal more than $49,000 and $35,000, respectively.  *Id.*  For each of these counts, the circuit court sentenced Oki to an indeterminate term of imprisonment of twenty years.  *Id.*

2.  Oki appealed to the Hawaiʻi Intermediate Court of Appeals (ICA) arguing, among other things, that his sentence under HRS § 708-893(1)(a) violates the Eighth

4

Amendment.  *Id.* at \*16.  On June 5, 2020, the ICA issued a decision upholding the

constitutionality of Oki's sentence.  *Id.* at \*16-20.

In its decision, the ICA began by noting the following:

The standard by which punishment is to be judged under the 'cruel and
unusual' punishment provisions of both the United States and Hawaiʻi
Constitutions is whether, in the light of developing concepts of decency
and fairness, the prescribed punishment is so disproportionate to the
conduct proscribed and is of such duration as to shock the conscience of
reasonable persons or to outrage the moral sense of the community.

*Id.* at \*17 (quoting *State v. Kahapea*, 111 Hawaiʻi 267, 282, 141 P.3d 440, 455 (2006)).

The ICA went on to explain that, in *State v. Freitas*, 61 Haw. 262, 602 P.2d 914

(1979), the Hawaiʻi Supreme Court had adopted a three-part framework to decide

whether a particular punishment is cruel and unusual.  *Id.*  Under the *Freitas*

framework, Hawaiʻi state courts consider the following three factors:  (1) the nature of

the offense and the offender, with particular regard to the degree of danger posed by

both to society; (2) the extent of the challenged penalty as compared to the punishments

prescribed for more serious crimes within the same jurisdiction; and (3) the extent of the

challenged penalty as compared to the punishment prescribed for the same offense in

other jurisdictions.  *Id.* (citing *Freitas*, 61 Haw. at 268, 602 P.2d at 920, *overruled on other*

*grounds by State v. Auld*, 136 Hawaiʻi 244, 361 P.3d 471 (2015)).  The ICA also noted that

"'the nature of the offense and the danger the offender poses to society are the key

factors in this determination.'"  *Id.* (quoting *Freitas*, 61 Haw. at 268, 602 P.2d at 920).

Regarding Oki's conduct, the ICA noted that Oki was charged with having stolen more than $49,000 as part of one scheme, and more than $35,000 as part of another scheme. *Id.* at *18. The ICA further noted that Oki had created fictitious identities, companies, email addresses, websites, and accounts for online payment services in furtherance of these schemes. *Id.* Although Oki's crimes did not involve violence, the ICA decided that it could not "say that the use of a computer to create fake companies, identities, and online accounts to obtain money far exceeding the $20,000 threshold for [theft in the first degree] [did] not pose a danger to society." *Id.* The ICA also noted that Oki's use of a computer to deposit money into accounts for online payment services that he later transferred to his personal bank accounts fell "within the purview of the type of conduct the legislature intended to prevent." *Id.*

Regarding Oki's sentence, the ICA stated that the applicable penalties under HRS § 708-893(1)(a) were not disproportionate to the sentences prescribed for more serious crimes in Hawai'i. *Id.* at *19. More serious crimes, the ICA noted, were punishable with life without the possibility of parole. *Id.* The ICA further said that classifying use of a computer to commit theft as a class A felony was comparable to the classification of other computer crimes as class A felonies in Hawai'i. *Id.* Although the ICA knew of only one other state with a comparable criminal statute, after considering all three factors together, the ICA concluded that Oki's sentence under HRS § 708-893(1)(a) was constitutional. *Id.* at *20.

Oki then submitted an application for a writ of certiorari, which the Hawai'i Supreme Court rejected. *State v. Oki*, No. SCWC-18-0000501, 2020 WL 6115119, at *1 (Haw. Oct. 16, 2020).

3.  Although the ICA's June 5, 2020, order rejected Oki's cruel and unusual punishment argument, it separately vacated a restitution order and remanded the matter to the circuit court for further proceedings.  A new judgment eventually was entered on remand, the ICA affirmed that judgment (rejecting arguments different from those raised here), and the Hawai'i Supreme Court affirmed on May 20, 2024.  *See State v. Oki*, 154 Hawai'i 180, 548 P.3d 1188 (2024).[1]  Oki moved for reconsideration, and the Hawai'i Supreme Court denied that motion on May 29, 2024.  *State v. Oki*, No. SCWC-22-0000129, 2024 WL 2746705, at *1 (Haw. May 29, 2024).

Oki thereafter deposited his 28 U.S.C. § 2254 petition in the prison mail system on August 29, 2024, within a year of the Hawai'i Supreme Court's May 29, 2024, order denying reconsideration.  ECF No. 1.  The petition thus appears to have been timely filed within the non-jurisdictional, one-year statute of limitations that generally applies

---

[1]    In the meantime, Oki filed in circuit court a petition pursuant to Rule 40 of the Hawai'i Rules of Penal Procedure.  *See* Petition, *Oki v. State of Hawai'i*, No. 1CPN-21-0000003 (Haw. Cir. Ct. Feb. 3, 2021), Dkt. 1.  The circuit court dismissed the petition, and Oki's appeal from that dismissal remains pending in the ICA.  *See Oki v. State of Hawai'i*, No. CAAP-23-0000541 (Haw. Ct. App.).  On December 1, 2022, Oki filed a second Rule 40 petition that is pending in circuit court.  *See* Petition, *Oki v. State of Hawai'i*, No. 1CPN-22-0000033 (Haw. Cir. Ct. Dec. 1, 2022), Dkt. 1.  None of these additional proceedings has any bearing on Oki's present petition.

to § 2254 petitions.  *See* 28 U.S.C. § 2244(d)(1).  Respondent does not challenge its timeliness.

## DISCUSSION

In his petition, Oki argues that the sentence he received for his use of computer convictions amounts to cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.  He argues that the state courts did not properly apply the U.S. Supreme Court's Eighth Amendment precedents.  And he therefore requests federal habeas relief.

### A.    AEDPA Highly Deferential Standards

In considering Oki's request, this Court is constrained by the "federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)," which "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  *Shoop v. Hill*, 586 U.S. 45, 48 (2019).  Under AEDPA's highly deferential standards, it is not enough for Oki to persuade this Court that his view of the Eighth Amendment is correct.  He must make the further showing that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," *id*. § 2254(d)(2).[2]

A state court decision is "contrary to" Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached by this Court on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Thus, the 'contrary to' prong requires a direct and irreconcilable conflict with Supreme Court precedent." *Murray v. Schriro*, 745 F.3d 984, 997 (9th Cir. 2014).

Alternatively, Oki might show that the state court decision is an "unreasonable application" of Supreme Court precedent. To do so, he would need to show that "the state court identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "the state court either unreasonably extends a legal principle from [Supreme Court]

---

[2]    One wrinkle is that these deferential standards apply only when a state court has resolved a petitioner's claim on the merits. *Kipp v. Davis*, 971 F.3d 939, 948 (9th Cir. 2020). But that did occur here: the ICA resolved Oki's Eighth Amendment claim on the merits on June 5, 2020. To be sure, the Hawaiʻi Supreme Court denied review of the ICA's decision without explanation on October 16, 2020, and its later decision on May 20, 2024, had no occasion to consider the issue. But this Court "may look through the unexplained decision to the last related state-court decision that does provide a relevant rationale and presume that the unexplained decision adopted the same reasoning." *Id.* at 948 (cleaned up). This Court therefore considers the reasoning of the ICA's June 5, 2020, decision and accords it the deference AEDPA requires for merits decisions.

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

Both standards under § 2254(d)(1) are "difficult to meet" and are satisfied only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Notably, "under either prong [of § 2254(d)(1),] a state court's decision does not need to cite the Supreme Court's cases, 'indeed, [the state court] does not even [need to be] *aware* [ ] of [the Supreme Court's] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Murray*, 745 F.3d at 998 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (brackets in original)). A petitioner must instead "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103; *see also Dunn v. Madison*, 583 U.S. 10, 12 (2017) (per curiam) (same). It is not enough that the state court decision was "incorrect or erroneous"; "[t]he state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

If a petitioner fails to satisfy the demands of § 2254(d)(1), they might still obtain relief by showing that the state court made unreasonable factual determinations under § 2254(d)(2). But under that latter provision, "a state-court factual determination is not

unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). State courts must be accorded "substantial deference" in making factual findings. *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). As the Supreme Court has put it: "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Id.* (alterations and internal quotation marks omitted). "This is a daunting standard—one that will be satisfied in relatively few cases." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds as stated in Murray*, 745 F.3d at 999-1000.

**B.  Oki Has Not Satisfied AEDPA's Standards**

Oki contends that the ICA's June 5, 2020, decision was both contrary to and an unreasonable application of clearly established federal law—namely, Supreme Court precedents interpreting the Eighth Amendment's bar against cruel and unusual punishment—and he further contends that the ICA's decision was based on an unreasonable determination of the facts. ECF No. 1 at PageID.14-15; *see also* ECF No. 2 at PageID.38. The Court addresses each argument in turn.

1. The Eighth Amendment commands that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. The last clause "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*,

463 U.S. 277, 284 (1983).  The Eighth Amendment thus "contains a 'narrow

proportionality principle,' that 'does not require strict proportionality between crime

and sentence' but rather 'forbids only extreme sentences that are 'grossly

disproportionate' to the crime.'"  *Graham v. Florida*, 560 U.S. 48, 59-60 (2010), *as modified*

(July 6, 2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-01 (1991) (Kennedy,

J., concurring in part and concurring in judgment)).

    In arguing that the ICA's June 5, 2020, decision was contrary to clearly

established Supreme Court precedent interpreting the Eighth Amendment, Oki relies

on *Solem*.  ECF No. 1 at PageID.15; ECF No. 2 at PageID.38-39, 43.  In *Solem*, the

Supreme Court called on courts to apply the gross disproportionality principle by

undertaking a three-factor analysis:  (1) considering the gravity of the offense and the

harshness of the penalty; (2) comparing the sentences imposed on other criminals in the

same jurisdiction; and (3) comparing the sentences imposed for commission of the same

crime in other jurisdictions.  463 U.S. at 290-91.  Oki contends that the ICA did not

strictly apply this three-factor approach, and that its decision therefore was contrary to

clearly established law.  *See* ECF No. 1 at PageID.15; ECF No. 2 at PageID.39; *see also*

ECF No. 8 at PageID.405 ("[T]he ICA did not properly apply the three[-]factor test in

*Solem*[.]").

    Assuming for the moment that the ICA was required to apply *Solem*'s

three-factor test (an assumption that, as we shall see, is not sound), Oki's argument still

fails because the ICA did consider the relevant factors. Applying the Hawai'i Supreme

Court's decision in *Freitas*, 61 Haw. 262, 602 P.2d 914, the ICA considered (1) the nature

of the offense and offender, with particular regard to the degree of danger posed by

both to society; (2) the extent of the challenged penalty as compared to the punishments

prescribed for more serious crimes within the same jurisdiction; and (3) the extent of the

challenged penalty as compared to the punishment prescribed for the same offense in

other jurisdictions. *Oki*, 2020 WL 3027401, at *17. Although the *Freitas* factors are not a

word-for-word recitation of *Solem*'s considerations, they overlap to such a degree that

only semantic hairsplitting could draw out any differences. And recall, too, that under

AEDPA, a state court need not cite or even be aware of federal precedents, "so long as

neither the reasoning nor the result of the state-court decision contradicts them."

*Murray*, 745 F.3d at 998. It cannot be said that the ICA's reasoning or result contradicted

the requirements of *Solem*.

But there remains a further reason why Oki's reliance on *Solem* is misplaced:

even if the *Freitas* factors "differ[ ] somewhat" from the *Solem* standard, as Oki

contends, ECF No. 1 at PageID.15, that difference would not entitle him to relief. And

that is because—contrary to our earlier assumption *arguendo*—the ICA was *not* required

to apply *Solem*. Indeed, as the Ninth Circuit has recognized, *Solem*'s three-factor

approach "was short-lived." *Norris v. Morgan*, 622 F.3d 1276, 1286 (9th Cir. 2010). Eight

years after deciding *Solem*, it emerged that "there was no agreement by a majority of the

Supreme Court on how to apply the proportionality principle." *Id.* In the face of this lack of agreement, the Supreme Court held unequivocally that the particularities of *Solem* were not controlling, and that, instead, "the only relevant clearly established law amenable to [AEDPA's] 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle" itself. *Lockyer*, 538 U.S. at 72-73. The upshot is that even if this Court were able to discern a difference between *Solem*'s three-factor inquiry and the ICA's *Freitas* analysis, that alone would not warrant federal habeas relief. A state court does not act contrary to clearly established Supreme Court precedent merely because it declines to apply *Solem*'s three-factor approach to the letter. *See Norris*, 622 F.3d at 1288 ("We . . . cannot conclude that the [state court's] failure to address specifically the *Solem* factors was contrary to a clearly established legal principle or framework at the time of its decision.").

And while the Supreme Court's precedents do clearly establish the more general gross disproportionality principle, Oki cannot show that the ICA's decision ran contrary to that principle. To apply the gross disproportionality principle, "courts must objectively measure the severity of a defendant's sentence in light of the crimes he committed." *Norris*, 622 F.3d at 1287. In determining the "gravity of the offense," courts must "look past the statutory classification of a crime to consider whether the crime involved the use of force, the degree of force used, whether weapons were used

in connection with the crime, and whether the crime otherwise threatened to cause grave harm to society." *Id.* (cleaned up).

Here, it appears that the ICA did compare the nature of Oki's crimes to the severity of his sentence. After all, the ICA began its analysis by noting that the relevant Eighth Amendment inquiry is whether "the prescribed punishment is . . . disproportionate to the conduct proscribed[.]" *Oki*, 2020 WL 3027401, at *17. Then, in applying the Hawai'i Supreme Court's *Freitas* standard, the ICA took into consideration both the seriousness of Oki's crimes and the severity of his sentence. It explained that while Oki's crime did not involve any violence, it still involved serious conduct that could fairly be viewed as posing a danger to society. And it concluded that Oki's sentence was not disproportionate to the sentences prescribed for more serious crimes in Hawai'i.

The fairest reading of the ICA's opinion, therefore, is that it did conduct the very comparative assessment Oki claims it failed to do. And if there were any doubt on that score, it would not avail Oki. AEDPA requires the Court to give the benefit of any doubt to the state court's decision—not to the habeas petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (stating that AEDPA imposes a "'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt'" (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)); *Ross v. Davis*, 29 F.4th 1028, 1042 (9th Cir. 2022) (same). Giving the ICA that benefit

15

here, the Court cannot say that its reasoning "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

2. In the alternative, Oki suggests that the ICA's use of the *Freitas* standard was an unreasonable application of the proportionality principle given the facts of his case. *See* ECF No. 1 at PageID.17-19; ECF No. 2 at PageID.40-43.

"'[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Here, no highly specific rule applies. Again, "the only relevant clearly established law amenable to [AEDPA's] . . . 'unreasonable application of' framework is the gross disproportionality principle" itself, and the contours of this principle are "unclear." *Lockyer*, 538 U.S. at 73. To the extent the Ninth Circuit has said that in applying the "gross disproportionality principle[,] courts must objectively measure the severity of a defendant's sentence in light of the crimes he committed," *Norris*, 622 F.3d at 1287, the ICA's decision does not reflect an unreasonable application of this framework.

As noted, the ICA considered both the nature of Oki's offenses and the severity of his resulting sentence. But Oki argues that the ICA should have considered additional factors in assessing the gravity of his offense, including his ownership

interest in the accounting firm, the fact that he was not convicted of "unauthorized theft," the fact that he was personally responsible for the accounting firm's debts, the fact that the stolen funds were reported as partnership distributions, and the fact that he reported to tax authorities the funds that he had stolen.  *See* ECF No. 1 at PageID.17; ECF No. 2 at PageID.40-41.  Oki further argues that the ICA should have also considered his "background and motive," the harm that resulted from his conduct, and his lack of criminal history.  *See* ECF No. 1 at PageID.17; ECF No. 2 at PageID.41. Finally, Oki asserts that the ICA should have also considered the fact that, by the time he was convicted and sentenced, HRS § 708-893(1)(a) no longer applied to the theft offenses for which he was convicted.  *See* ECF No. 1 at PageID.17; ECF No. 2 at PageID.42.

As to that last point—the fact that the Hawaiʻi state legislature has amended the law—it is perhaps significant that the legislature chose not to make the amendment retroactive.  Oki is not well positioned to argue that the amendment signals a legislative judgment that his sentence is unduly long, given that an aspect of the legislative judgment was to leave sentences like his—sentences resulting from charges that predated the effective date of the amendment—in place.  In addition, although the Hawaiʻi state legislature decided that use of a computer during a theft offense should not categorically be a separate crime, that decision does not necessarily reflect a legislative judgment that using a computer to commit theft would never warrant an

17

enhanced penalty.  If anything, the legislature's decision not to make the amendment

retroactive hints at the opposite judgment.

In any event, even if the Court were to agree with Oki that the ICA could have

considered additional factors in assessing the constitutionality of his sentence, and even

assuming those factors would have weighed somewhat in Oki's favor, AEDPA requires

still more before federal habeas relief may be granted.  "It is not enough that the state

court decision was 'incorrect or erroneous'; '[t]he state court's application of clearly

established law must be objectively unreasonable.'"  *Marks v. Davis*, 106 F.4th 941, 949

(9th Cir. 2024) (quoting *Lockyer*, 538 U.S. at 75) (alteration in original).  Given that the

ICA appropriately considered both the nature of Oki's offenses and the severity of his

resulting sentence, the Court cannot conclude that its decision was objectively

unreasonable.  *See Harrington*, 562 U.S. at 102 ("It bears repeating that even a strong case

for relief does not mean the state court's contrary conclusion was unreasonable." (citing

*Lockyer*, 538 U.S. at 75)).

3.  Finally, Oki argues that the ICA's decision was based on an unreasonable

determination of the facts.  ECF No. 1 at PageID.14-15; ECF No. 2 at PageID.38.

Oki does not allege that the ICA made any factual determinations in this case.

Nor could he plausibly do so.  The ICA relied on factual findings made by the circuit

court—not its own—in concluding that Oki's sentence did not violate the Eighth

Amendment.  *See Oki*, 2020 WL 3027401, at *18-19.  And Oki has never challenged any

of the relevant factual findings made by the circuit court.  Given this, Oki's argument

under § 2254(d)(2) must fail.

The crux of Oki's argument appears to be that, in analyzing his claims, the ICA

inaccurately described the timing of various events.  ECF No. 1 at PageID.16; ECF No. 2

at PageID.39-40.  For example, he criticizes the ICA's sequential description of when he

created fake companies, identities, and online accounts in relation to his thefts.  ECF No.

1 at PageID.16; ECF No. 2 at PageID.39-40.  Oki does not dispute, however, that the

evidence presented at trial supports the circuit court's findings that he engaged in the

various acts cited by the ICA.  Oki only takes issue with the ICA's description of the

relative timing of those events.  *See* ECF No. 1 at PageID.16 ("While the trial records

reflect that [Oki] provided fictitious companies, identities, and email addresses to the

minority partners, it occurred *well after* [Oki] received the cash from Paypal and

Square." (emphasis added)); ECF No. 2 at PageID.40 (similar).

Even if there were grounds to critique the ICA's description of the timing of

certain events, there would be no basis to say that the ICA's Eighth Amendment ruling

was based on any unreasonable factual determinations.  And that is because Oki has not

explained why any of the criticized passages in the ICA's opinion have any bearing on

the Eighth Amendment inquiry.  Put differently, Oki has not shown that any alleged

misapprehension or misstatement of the record "'goes to a material factual issue that is

central'" to his claim.  *Marks*, 106 F.4th at 949 (quoting *Murray*, 745 F.3d at 1001).

19

Oki does not dispute the circuit court's findings that he used a computer to steal more than $49,000 as part of one scheme, and more than $35,000 as part of another scheme.  Nor does Oki dispute the circuit court's findings that he created fictitious identities, companies, email addresses, websites, and accounts for online payment services in furtherance of his crimes.  The relative timing of these events is immaterial. At most, they bear on how important the use of the computer was to Oki's commission of his crimes.  But in determining the "gravity of the offense," the ICA was not required to formalistically limit its focus to the use of the computer itself; it was required to "look past the statutory classification of a crime" to consider whether, in fact, the crime "threatened to cause grave harm to society."  *Norris*, 622 F.3d at 1292 (cleaned up).  The ICA did precisely that—it considered, not what label attached to Oki's conviction, but what he actually did.  Thus, the Court cannot find that the ICA's decision was based on an unreasonable determination of the facts.  *See McGill v. Shinn*, 16 F.4th 666, 685 (9th Cir. 2021) ("Section 2254(d)(2) imposes a 'daunting standard' to disrupt a state court's factual findings, which precludes relief in all but 'relatively few cases.'" (quoting *Taylor*, 366 F.3d at 1000)).

As a final contention, Oki asserts that he is "the only offender in the State of [Hawai'i] (and in the United States) currently incarcerated for using a computer to commit theft under 20-year sentences."  ECF No. 2 at PageID.37.  It is a striking assertion, but even if true, it does not entitle Oki to federal habeas relief.  Once again,

20

Oki places undue weight on the formal category of crime for which he was convicted.

Supreme Court precedent does not clearly establish any need to follow such formalism.

Instead, it instructs a court to consider the seriousness of the crime a defendant has

actually committed.  That is what the ICA did when it concluded that Oki's sentence

was not cruel and unusual punishment.

## CONCLUSION

For the foregoing reasons, Oki's petition is DENIED.  The Court also DENIES a

certificate of appealability because Oki has not made a substantial showing of the denial

of a constitutional right.  *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484

(2000) ("Where a district court has rejected the constitutional claims on the merits, the

showing required to satisfy § 2253(c) is straightforward:  The petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong.").  The Clerk is DIRECTED to enter judgment

and close this case.

IT IS SO ORDERED.

DATED:  January 23, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

_____

Civil No. 24-00413 MWJS-RT; *Patrick H. Oki v. Shawn Ornellas*; ORDER DENYING PETITION
UNDER 28 U.S.C. § 1154 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE
CUSTODY, ECF NO. 1, AND DENYING CERTIFICATE OF APPEALABILITY